# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10-00073-05-CR-W-NKL |
| | ) |
| PHOENIX INTERNATIONAL | ) |
| TELEPORT SATELLITE SERVICES, | ) |
| INC., a/k/a "The Teleport," | ) |
| | ) |
| Defendant. | ) |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The United States of America, through its undersigned attorneys, and the defendant, Phoenix International Teleport Satellite Services, Inc., a/k/a "The Teleport," its Vice President Scott Peterson, its attorney, Gerald M. Handley, and Erik Wilson, the Founder of Phoenix International Teleport which later became known as Phoenix International Teleport Satellite Service, Inc., do hereby enter into the following Plea Agreement. Any reference to the United States or the government in this Agreement shall mean the offices of the United States Attorney for the Western District of Missouri and the Organized Crime and Racketeering Section ("OCRS") of the United States Department of Justice, Criminal Division, acting on its behalf. This Agreement binds only the parties, the United States Attorney for the Western District of Missouri, and OCRS, and does not bind any other federal, state, or local prosecution authority.

**2. Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count One of the Indictment charging it with a violation of 18 U.S.C. § 1955, that is, conducting an illegal gambling

business. The defendant also agrees to forfeit to the United States the property further described herein. By entering into this plea agreement, the defendant admits that it knowingly committed this offense, and is in fact guilty of this offense.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which it is pleading guilty are as follows:

From on or about March 1, 2006, to March 31, 2009, Phoenix International Teleport Satellite Services, Inc., a/k/a "The Teleport," conducted an illegal sports bookmaking business operated in the Kansas City, Missouri metropolitan area and elsewhere. "Bookmaking" is a form of gambling and involves the business of establishing certain terms and conditions applicable to given bets or wagers, usually called a line or odds, and then accepting bets from members of the public on either side of the wagering proposition with a view toward making a profit from a percentage or commission collected from the bettors or customers for the privilege of placing the bets. Bookmaking is a felony crime in the State of Missouri when conducted as a business rather than in a casual or personal fashion, and when a bookmaker or bookie accepts more than one bet in any day and accepts more than $100 in bets.

The Teleport was a corporation organized in Arizona with the physical address of 7065 West Allison Road, Chandler, Arizona. The Teleport was founded by Erik Wilson in order to provide 1-800 telephone service and later internet service to offshore sports books primarily located in Costa Rica. The Teleport provided the offshore sports books with 1-800 dial tone that provided access to customers located in the United States. The Teleport provided this service knowing that the offshore sports books would provide illegal gambling services on a price per head basis to bookmakers located in the United States.

Prior to March 2006, Erik Wilson sold The Teleport and he retained the right to receive all profits until June 2010. From 2007 to the present, Scott Peterson was the Vice President and Treasurer of The Teleport and also a 45% owner of The Teleport. From March 31, 2006 to March 12, 2009, Erik Wilson received $2,867,857.57 in profits from The Teleport.

The bookmakers in this illegal sports bookmaking business provided their bettors with a 1-800 toll free telephone number, (800) 335-9003, hereinafter the "Bettor number," and the website www.best24b.com. Bookmakers would also provide their bettors with an account number and a password. In order to place a wager on a sporting event, the bettor would call the bettor number or access the website. Bettors would then provide their account number and password in order to be allowed to place a wager, access their wagering history and obtain other information.

The bookmakers in this illegal sports bookmaking business would use a separate 1-800 telephone number, (800) 330-5667, hereinafter the "Bookmaker number," or the website, to track their bettor's activities and account balances. The bookmakers also had their own username and password in order to access their bettors' information and make changes to their bettors' accounts as necessary.

Both toll free 1-800 numbers were provided by The Teleport in Arizona to Elite Sports located in Costa Rica for use in furtherance of this illegal sports bookmaking business. Under this scheme, Elite Sports acted as a virtual wire room for the illegal sports bookmaking operation - taking wagers and keeping electronic records of bettors' activities and results on a computer server located in Costa Rica. Elite Sports did not have an interest in the outcome of the wagers, but instead charged the illegal sports bookmaking business a fee for managing each bettor's account, a "price per head." Gerlarmo Cammisano was responsible for collecting this fee from the bookmakers and forwarding

it to Elite Sports. Elite Sports then paid The Teleport a fee for providing each 1-800 telephone number. To collect the fee, The Teleport utilized a third-party billing and collections company, Ingenieria later renamed Quality Tel, which was located in Venezuela.

The bookmakers located in the Kansas City, Missouri metropolitan area would pay out or collect cash in person from their bettors usually on a weekly basis, paying the collections up to the organizer/manger of the illegal sports bookmaking business. The bettors wagered over $3,584,895.79, during the course of this illegal sports bookmaking business.

    **4. Use of Factual Admissions.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining its guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which it is pleading guilty.

    **5. Statutory Penalties.** The defendant understands that upon its plea of guilty to Count One of the Indictment charging it with prohibition of an illegal gambling business, the maximum penalty the Court may impose on an individual is not more than five years of imprisonment, a $250,000 fine, three years of supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The maximum penalty the Court may impose on an organization is a fine of $500,000, up to five years of Probation and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class D felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

      a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

      b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

      c. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

      d. the Court may order restitution to be paid to victims of the offense to which it is pleading guilty, the conduct charged in any dismissed counts of the Indictment, and all other uncharged related criminal activity;

      e. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

      f. the defendant may not withdraw its guilty plea solely because of the nature or length of the sentence imposed by the Court;

      g. Erik Wilson, Scott Peterson, and The Teleport agree to forfeit all interest they own or over which they exercise control, directly or indirectly, in $75,000 in United States currency which the parties agree is property subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 18 U.S.C. § 1955(d) and 21 U.S.C. § 853(p). The parties agree to pay the $75,000 to the United States prior to the date of The Teleport's guilty plea;

      h. Erik Wilson, Scott Peterson, and The Teleport also agree that all interests they own or over which they exercise control, directly or indirectly, in the assets currently subject to the Post-Indictment Restraining Order and Injunction and as specifically described in the Governments Return and Inventory. (Doc. 32.) The defendant agrees that the identified assets are subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 18 U.S.C. § 1955(d) and 21 U.S.C.

§ 853(p). The United States agrees to release The Teleport's assets currently subject to the Post-Indictment Restraining Order and Injunction for the limited purpose of allowing Erik Wilson, Scott Peterson, and The Teleport to sell the assets to a buyer approved by the United States in a manner approved by the United States. The buyer of the assets is to pay the proceeds of the sale directly into an escrow account with The Teleport's counsel Gerald M. Handley, which is then to be paid to the United States less reasonable attorney's fees as approved by the government. The parties agree that these proceeds are subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 18 U.S.C. § 1955(d) and 21 U.S.C. § 853(p);

 i. Erik Wilson, Scott Peterson, and The Teleport understand that the United States, in agreeing to forfeit the $75,000 in United States currency described above, is foregoing other actions. The parties agree that if they have not paid the United States in full the $75,000 described above by the time of the guilty plea, or if they fail to comply with the terms of the sale of the above described assets, the defendant consents to the entry of an order of forfeiture by the Court up to the full amount of the money judgment identified in the indictment, that is $3,584,895.79;

 j. Erik Wilson, Scott Peterson, and The Teleport understand that the United States, in agreeing to forfeit the $75,000 in United States currency described above, is foregoing, among other actions, the forfeiture of other property owned by the parties. The parties agree that if they have not paid the United States in full the $75,000 described above at the designated time or if they fail to comply with the terms of the sale of the above described assets that the United States may, at its option: (1) be released from all of its obligations under this plea agreement, or (2) let the plea agreement stand and take other action as it deems appropriate, including pursuit of any and all assets of the defendant up to the value of the money judgment requested in the indictment;

 k. With respect to any of the above-identified assets which Erik Wilson, Scott Peterson, and The Teleport have agreed to forfeit, the parties waive any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

 l. The defendant states that it is the sole and rightful owner of the assets currently subject to the Post-Indictment Restraining Order and Injunction, and that to the best of its knowledge no one else has any ownership or other interest in the property; and

 m. The parties agree to take all necessary steps to comply with the forfeiture matters set forth herein before The Teleport's sentencing.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against The Teleport, Scott Peterson, or Erik Wilson for any federal criminal offenses related to prohibition of an illegal gambling business for which it has venue and which arose out of the parties' conduct described above.

The parties understand that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The parties recognize that the United States' agreement to forego prosecution of all of the criminal offenses with which the parties might be charged is based solely on the promises made by the parties in this agreement. If the parties breach this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The parties expressly waive their right to challenge the initiation of the dismissed or additional charges against them if they breach this agreement. The parties expressly waive their right to assert a statute of limitations defense if the dismissed or additional charges are initiated against them following a breach of this agreement. The parties further understand and agree that if the Government elects to file additional charges against them following a breach of this plea agreement, The Teleport will not be allowed to withdraw its guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the

defendant, including the entirety of its criminal activities. The defendant understands these disclosures are not limited to the count to which it has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw its plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts its plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, it will not be permitted to withdraw its plea of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the

-8-

Case 4:10-cr-00073-NKL   Document 131   Filed 06/30/11   Page 8 of 16

defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines sections for the offense of conviction is U.S.S.G. § 8A1.2, and The Teleport was a criminal purpose organization under § 8C1.1.

    c. Based upon the parties agreement that all of The Teleport's assets are forfeitable and the agreement to sell the assets and pay the proceeds to the government to be forfeited, the parties agree that a fine should not be imposed in this case and at the time of sentencing will recommend that the Court not impose a fine.

    d. The parties agree that the defendant is subject to a term of probation as provided for in U.S.S.G. § 8D1.2. The parties further agree that in the event the compliance with the forfeiture provision of this agreement has not been satisfied by the date of sentencing, it shall be made a special condition of any term of probation that is imposed by the Court.

    e. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw its plea of guilty;

    f. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

    g. The defendant understands and agrees that the factual admissions contained in Paragraphs 3 and 4 of this plea agreement, and any admissions that it will make during its plea colloquy, support the imposition of the agreed Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until its guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against it;

    e. the right to compel or subpoena witnesses to appear on its behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against it.

The defendant understands that by pleading guilty, it waives or gives up those rights and that there will be no trial. The defendant further understands that if it pleads guilty, the Court may ask it questions about the offense or offenses to which it pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making a false statement. The defendant also understands it has pleaded guilty to a felony offense and, as a result, it might be deprived of other rights.

**15. Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement it waives its right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement.

    b. The defendant expressly waives its right to appeal its sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) a sentence imposed in excess of the statutory maximum; or (4) an illegal sentence. An illegal sentence is a sentencing error more serious than a misapplication of the Sentencing Guidelines, an abuse of discretion,

or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal its sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Waiver of FOIA Request.** The defendant waives all of its rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

17. **Waiver of Claim for Attorney's Fees.** The defendant waives all of its claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

18. **Defendant's Agreement to Destruction of Biological Evidence.** In accordance with 18 U.S.C. § 3600A(c)(2), the defendant knowingly and voluntarily waives its right to request DNA testing of any biological evidence which may have been obtained or seized by law enforcement in its case. Defendant agrees that all biological evidence which may have been obtained or seized may be destroyed by law enforcement authorities.

19. **Defendant's Breach of Plea Agreement.** If the parties commit any crimes, violate any conditions of release, or violate any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fail to appear for sentencing, or if the parties provide information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its

obligations under this agreement. The parties, however, will remain bound by the terms of the agreement, and the defendant will not be allowed to withdraw its plea of guilty.

The parties also understand and agree that in the event they violate this plea agreement, all statements made by them to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by them before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against them in any and all criminal proceedings. The parties waive any rights that they might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by them subsequent to this plea agreement.

**20. Defendant's Representations.** The parties acknowledge that they have entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The parties acknowledge that they are satisfied with the assistance of counsel, and that counsel has fully advised them of their rights and obligations in connection with this plea agreement. The parties further acknowledge that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, the parties' attorneys or any other party to induce them to enter into this plea agreement.

Scott Peterson and The Teleport acknowledge that they have discussed with their counsel the conflict of interest that exists based upon joint representation of counsel in this case. Scott Peterson and The Teleport acknowledge that they are aware of their right to have separate representation in this case, and they have knowingly and voluntarily waived that right, waived any conflict of interest and agree to joint representation in this case.

-13-

**21. No Undisclosed Terms.**  The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Beth Phillips
United States Attorney

Dated:   6/1/11            By:    */s/ Paul S. Becker*
Paul S. Becker
Assistant United States Attorney
Chief, Violent Crimes Strike Force Unit


*/s/ Jess E. Michaelsen*
Jess E. Michaelsen, #52253
Assistant United States Attorney

I am the Vice President and Treasurer of The Teleport and I have been authorized by The Teleport to enter into this agreement on its behalf. I have consulted with an attorney and fully understand all of my rights as well as The Teleport's rights with respect to the offenses charged in the Indictment. Further, I have consulted with an attorney and fully understand my rights and The Teleport's rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with an attorney. I understand this plea agreement and I personally and as the authorized representative of The Teleport voluntarily agree to the terms of the plea agreement.


Dated:    6/30/11                              */s/ Scott Peterson*
                                               Scott Peterson, Vice President and Treasurer
                                               Phoenix International Teleport Satellite Services, Inc.
                                               a/k/a "The Teleport"
                                               Defendant


I am the attorney for Scott Peterson and The Teleport. I have fully explained to Mr. Peterson his rights and The Teleport's rights with respect to the offenses charged in the Indictment. Further, I have reviewed with Mr. Peterson the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with Mr. Peterson. To my knowledge, Mr. Peterson's decision to enter into this plea agreement personally and on behalf of The Teleport is an informed and voluntary one. I have also fully explained to Mr. Peterson in his personal capacity and that as a duly authorized officer of The Teleport the potential conflicts of interest in my joint representation and their right to have separate representation. Mr. Peterson in his personal capacity and that as an officer of The Teleport has voluntarily waived any conflict of interest and has agreed to the joint representation in this case.


Dated:    6/30/11                              */s/ Gerald M. Handley*
                                               Gerald M. Handley
                                               Attorney for The Teleport and Scott Peterson

I have consulted with my attorney and fully understand all of my rights with respect to this agreement. I have read this agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it.


Dated:     3/15/11                             */s/ Erik Wilson*
                                               Erik Wilson, Founder
                                               Phoenix International Teleport
                                               a/k/a "The Teleport"


I am Erik Wilson's attorney. I have fully explained to him his rights with respect to this agreement. I have carefully reviewed every part of this agreement with him. To my knowledge, Erik Wilson's decision to enter into this agreement is an informed and voluntary one.


Dated:     3/15/11                             */s/ William L. Kutmus*
                                               William L. Kutmus
                                               Attorney for Erik Wilson